# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| TTF, L.L.C. ) | ASBCA No. 59303 |
| ) | |
| Under Contract No. FA8251-09-C-0048 ) | |

APPEARANCE FOR THE APPELLANT:  Mr. David Storey
                                President

APPEARANCES FOR THE GOVERNMENT:  E. Michael Chiaparas, Esq.
                                  DCMA Chief Trial Attorney
                                 Douglas R. Jacobson, Esq.
                                  Trial Attorney
                                  Defense Contract Management Agency
                                  Bloomington, MN

## OPINION BY ADMINISTRATIVE JUDGE PAUL PURSUANT TO BOARD RULE 12.3

This is a timely appeal of a contracting officer's (CO's) final decision denying appellant TTF, L.L.C.'s (TTF's) claim that it accepted a convenience termination settlement under duress. The Contact Disputes Act (CDA), 41 U.S.C. §§ 7101-7109, is applicable. TTF opted to use the accelerated procedure provided by Board Rule 12.3, and the parties agreed to submit the appeal on the record under Board Rule 11. We deny the appeal.

## SUMMARY FINDINGS OF FACTS

1. The United States Air Force awarded Contact No. FA8251-09-C-0048 to TTF on 28 September 2009. This was a firm fixed-price contract in the amount of $156,000. Its subject matter was three types of aircraft structural panels, each of which was identified by separate contract line item numbers. Under the contract, TTF was required to provide three first article test reports, three first articles (FAs), and, upon approval of the FAs, various production quantities. (R4, tab 2 at G-5 to -10)

2. The contract contained the following pertinent Federal Acquisition Regulation (FAR) provisions: FAR 52.233-1, DISPUTES (JUL 2002); and FAR 52.249-2, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT

(Fixed-Price) (May 2004) (IAW FAR 49.502(b)(1)(i)). The latter clause provided, in pertinent part:

(a) The Government may terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer determines that a termination is in the Government's interest. The Contracting Officer shall terminate by delivering to the Contractor a Notice of Termination specifying the extent of termination and the effective date.

(b) After receipt of a Notice of Termination, and except as directed by the Contracting Officer, the Contractor shall immediately proceed with the following obligations, regardless of any delay in determining or adjusting any amounts due under this clause:

(1) Stop work as specified in the notice.

(2) Place no further subcontracts or orders (referred to as subcontracts in this clause) for materials, services, or facilities, except as necessary to complete the continued portion of the contract.

(3) Terminate all subcontracts to the extent they relate to the work terminated.

(4) Assign to the Government, as directed by the Contracting Officer, all right, title, and interest of the Contractor under the subcontracts terminated, in which case the Government shall have the right to settle or to pay any termination settlement proposal arising out of those terminations.

(5) With approval or ratification to the extent required by the Contracting Officer, settle all outstanding liabilities and termination settlement proposals arising from the termination of subcontracts; the approval or ratification will be final for purposes of this clause.

(6) As directed by the Contracting Officer, transfer title and deliver to the Government—

(i) The fabricated or unfabricated parts, work in process, completed work, supplies, and other material produced or acquired for the work terminated; and

(ii) The completed or partially completed plans, drawings, information, and other property that, if the contract had been completed, would be required to be furnished to the Government.

(7) Complete performance of the work not terminated.

(8) Take any action that may be necessary, or that the Contracting Officer may direct, for the protection and preservation of the property related to this contract that is in the possession of the Contractor and in which the Government has or may acquire an interest.

(9) Use its best efforts to sell, as directed or authorized by the Contracting Officer, any property of the types referred to in subparagraph (b) (6) of this clause; *provided*, however, that the Contractor (i) is not required to extend credit to any purchaser and (ii) may acquire the property under the conditions prescribed by, and at prices approved by, the Contracting Officer. The proceeds of any transfer or disposition will be applied to reduce any payments to be made by the Government under this contract, credited to the price or cost of the work, or paid in any other manner directed by the Contracting Officer.

(R4, tab 2 at G-20)

3. On 13 September 2011, the CO issued Modification No. P00001 which changed the delivery schedule, updated the data package, and incorporated additional clauses (R4, tab 3).

4. On 6 December 2011, the CO forwarded a memorandum to the "DCMA TERMINATIONS DIVISION" regarding the "Assignment of Termination Case for Settlement Contract FA8251-09-C-0048." In the "REMARKS" section of her memorandum, the CO stated:

Delay in issuance of termination is due to discussions being held with DLA attorney...and the contractor.

Terminated due to poor quality of F.A. submittal and government unable to sustain T4D.

(R4, tab 4 at G-35, -37)

5. On 5 January 2012, the CO issued Modification No. P00002 which terminated the contract for convenience. The modification confirmed the government's "Message" of 8 December 2011 which stated that the contract was being terminated (R4, tab 5). DCMA was assigned the task of negotiating a settlement of the termination (R4, tab 4).

6. On 5 January 2012, TTF submitted its first settlement proposal "INVENTORY BASIS" to DCMA's Termination Contracting Officer (TCO), Ms. Anita Diaz, on standard form 1435. The total amount which TTF sought through this proposal was $93,980.50. (R4, tab 6)

7. On 25 June 2012, TTF revised its termination settlement proposal to state a total amount of $99,909 (R4, tab 24 at G-273).[1] On 29 June 2012, Ms. Diaz requested that the Defense Contract Audit Agency (DCAA) examine TTF's updated settlement proposal of 25 June 2012 (*id.*).

8. On 7 December 2012, DCAA issued its audit report of TTF's revised settlement proposal. It concluded generally that the proposal was "not acceptable for negotiation of a fair and reasonable price." Specifically, DCAA stated:

- We questioned the proposed raw material, finished components, and work-in-process for the following reasons: certain raw materials were purchased before contract award, and we could not determine if materials were purchased for the specific contract; the contractor did not provide verifiable support for the finished components; and work-in-process was questioned based on the results of a technical evaluation (See Exhibit, Notes 1, 2, 3).
- We questioned general & administrative expenses based on questioned total cost input base (raw material,

---

[1] On 16 October 2012, TTF, once again, revised its termination settlement proposal to state a total amount of $124,196.36 (R4, tab 22).

4

- finished components, and work-in-process) (see Exhibit, Note 4).

(R4, tab 24 at G-273) In monetary terms, DCAA questioned $92,374 of TFF's total proposed costs of $99,909 (*id.* at G-276).

9. On 10 December 2012, the TCO forwarded a copy of DCAA's audit report to TTF for its "review and comments" (R4, tab 25). On 12 December 2012, TTF provided the TCO with its evaluation of the audit report. It disagreed with the majority of DCAA's conclusions and requested partial payment in the amount of $78,300. (R4, tab 26 at G-328-35) On 18 December 2012, the TCO forwarded TTF's response to DCAA for further evaluation (R4, tab 27).

10. DCAA forwarded its response to the TCO on 20 December 2012. It noted that its "total settlement amount is unchanged." DCAA also stated: "We requested numerous time[s] for the contractor to provide verifiable supporting documentation...used to manufacture the finished components...and the work-in-process...but the support was not provided." DCAA also wrote: "We requested a tour of the facility to observe the physical existence of the tools, but they were not provided." DCAA stated further: "Additionally, the contractor did not provide verifiable support for the material used to make the tools." (R4, tab 28 at 1) On 14 January 2013, the TCO forwarded an email to TTF, requesting the supporting documentation sought by the auditor. Ms. Diaz concluded by stating that she could approve a partial payment of 90% of the unquestioned settlement expenses. (R4, tab 29 at 1)

11. On 1 February 2013, TTF confirmed by email the TCO's authorization of a partial payment. It also stated: "TTF will be increasing for the additional time spent over the past month getting copies of requested documents." (R4, tab 31) By email of 4 February 2013, TTF informed the TCO that it was in complete disagreement with DCMA's report concluding that the contract was zero percent completed (R4, tab 32).

12. By email dated 11 March 2013, TTF requested that the TCO forward a settlement offer in writing. It also stated that it had already filed a delay claim "for this contract under the Contract Disputes Act of 1978." (R4, tab 36 at G-453)

13. By cover letter dated 22 March 2013, the TCO forwarded her "best and final offer" to TTF. Ms. Diaz offered a total amount of $27,340, which included the partial payment of $7,545. (R4, tab 37 at G-459)

14. On 26 March 2013, TTF stated in writing its "complete disagreement over the settlement offer." Nevertheless, it requested that the TCO "issue the modification for a payment of $27,340.00 with the understanding that we do not agree with your

5

settlement decision." It concluded: "TTF continues to reserve all rights afforded under the contract with regards to your decision." (R4, tab 38)

15. On 28 March 2013, the TCO forwarded Modification No. A00001 to TTF for signature. It provided that TTF would be paid a total amount of $27,340 for the termination of the contract. The modification stated that the settlement amount "constitutes payment in full and complete settlement of the amount due the Contractor for the complete termination of the contract," with the exception of the following rights and liabilities:

> (i) All rights and liabilities, if any, of the parties, as to matters covered by any renegotiation authority.

> (ii) All rights of the Government to take the benefit of agreements or judgments affecting royalties paid or payable in connection with the performance of the contract.

> (iii) All rights and liabilities, if any, of the parties under those clauses inserted in the contract because of the requirements of Acts of Congress and Executive Orders, including, without limitation, any applicable clauses relating to: labor law, contingent fees, domestic articles, and employment of aliens.

> (iv) All rights and liabilities, of the parties arising under the contract and relating to reproduction rights, patent infringements, inventions, or applications for patents, including rights to assignments, invention reports, licenses, covenants of indemnity against patent risks, and bonds for patent indemnity obligations, together with all rights and liabilities under the bonds.

> (v) All rights and liabilities of the parties, arising under the contract or otherwise, and concerning defects, guarantees, or warranties relating to any articles or component parts furnished to the Government by the Contractor under the contract or this agreement.

> (vi) All rights and liabilities of the parties under the contract relating to any contract termination inventory stored for the Government.

6

(vii) All rights and liabilities of the parties under agreements relating to the future care and disposition by the Contractor of Government-owned property remaining in the Contractor's custody.

(viii) All rights and liabilities of the parties relating to Government property furnished to the Contractor for the performance of this contract.

(ix) All rights and liabilities of the parties under the contract relating to options (except options to continue or increase the work under the contract), covenants not to compete and covenants of indemnity.

(x) All rights and liabilities, if any, of the parties under those clauses of the contract relating to price reductions for defective cost or pricing data.

(R4, tab 40 at G-472-74) There is no record evidence demonstrating that any of these exceptions was applicable to the parties' negotiations.

16. On 3 April 2013, TTF appealed its delay claim on a deemed denial basis. The Board docketed the appeal as ASBCA No. 58613 on 9 April 2013. (Gov't br., ex. G-1, ¶ 9)

17. By email dated 5 April 2013, TTF forwarded a signed page of Modification No. A00001 to the TCO. TTF requested that the TCO sign the document and return it to TTF so that it could process it for payment. The email contained only the first page of the modification. (R4, tab 41)

18. On 8 April 2013, the TCO signed bilateral Modification No. A00001 and forwarded a copy of the entire modification to TTF (R4, tab 42).

19. On 8 April 2013, the TCO received the first two pages of the modification from TTF. On those pages, TTF wrote that it was not certifying the costs referenced in the modification, that it was reserving its rights under the CDA, and that it had already filed a CDA claim. (R4, tab 43 at G-484)

20. On 9 April 2013, the TCO executed unilateral Modification No. A00002 which rescinded Modification No. A00001 in its entirety (R4, tab 44 at G-490). In a letter of 10 April 2013, the TCO explained that she had rescinded Modification No. A00002 because TTF "made unauthorized changed to pages 2 and 3" which it had not included in its email of 5 April 2013 (*id.* at G-492).

7

21. By email dated 12 April 2013, the TCO transmitted bilateral Modification No. A00003 to TTF. In her cover letter, she wrote:

> Previous Modification No. A00001 was rescinded because you made changes on the modification transmitted to me by mail. I am forwarding Modification No. A00003 for you to endorse as is and return. Please sign the first page, initial and date pages 2 and 3, and return the entire modification to me. I will not sign it if you indicate you are signing the modification under duress and will, instead, process a settlement by determination under FAR 49.109-7.

(R4, tab 45)

22. On 15 April 2013, TTF signed and initialed Modification No. A00003 without any reservations whatsoever. In its cover letter transmitting the executed modification, TTF stated: "Please sign and send back asap, so that TTF can submit into WAWF for payment." (R4, tab 46)

23. On 16 April 2013, the TCO executed Modification No. A00003 and transmitted it to TTF for its use in invoicing for payment (R4, tab 47).

24. On 29 April 2013, the government paid TTF $19,795. It had previously paid TTF $7,545 under this contract. (R4, tab 50)

25. On 12 August 2013, the Board denied TTF's delay claim in ASBCA No. 58613. This was an unpublished decision issued pursuant to Board Rule 12.2. (Gov't br., ex. G-1)

26. On 13 February 2014, TTF filed a claim in the amount of $95,710.55, contending that it had accepted the settlement amount of $19,795 because it was under financial duress (R4, tab 51).

27. On 1 May 2014, the TCO issued a final decision denying TTF's claim. She found that TTF's claim was barred by the doctrines of accord and satisfaction and release. The TCO also found the execution of the modification was intentional and voluntary and not the product of duress. (R4, tab 52 at G-524-25)

28. This appeal followed.

8

DECISION

The only issues before the Board are whether bilateral Modification No. A00003 constituted an accord and satisfaction of TTF's termination settlement claim and whether the bilateral agreement was invalidated by duress.

With respect to an accord and satisfaction, the basic elements are proper subject matter, competent parties, a meeting of the minds, and consideration. *DTC Engineers & Constructors, LLC*, ASBCA No. 57614, 12-1 BCA ¶ 34,967 at 171,898-99. Here, all of these elements have been met. Further, TTF accepted the consideration offered by the TCO as "payment in full and complete settlement of the amount due the Contractor for the complete termination of the contract" (R4, tab 46 at 499). Moreover, TTF signed and initialed the modification, as requested by the TCO, without any reservations whatsoever (finding 21). Based upon these facts, the Board concludes, as a matter of law, that TTF's claim is barred by the doctrine of accord and satisfaction.

Regarding the issue of duress, TTF bears the burden of proof. *Aerospace Engineering & Support, Inc.*, ASBCA No. 45382, 95-2 BCA ¶ 27,648 at 137,821. Accordingly, it must establish that it involuntarily accepted the modification's terms, that circumstances permitted no other alternative, and that such circumstances resulted from the other party's actions. *PNL Commercial Corp.*, ASBCA No. 53816, 04-1 BCA ¶ 32,414 at 160,457. Initially, we note that TTF has not proffered any evidence that it involuntarily accepted the modification's terms. In fact, it signed and initialed the modification without any reservations whatsoever (finding 22).

Regarding alternatives, as the government suggests in its brief, TTF could have perfected an appeal with this Board (gov't br. at 15-16). As evidenced by the fact that it had previously filed a delay claim under this contract, it was certainly familiar with this process (findings 16, 25).

Finally, there is no evidence of coercion on the TCO's part. In fact, when she transmitted the modification to TTF, Ms. Diaz stated that she would not sign the modification "if you indicate that you are signing...under duress and will, instead, process a settlement by determination under FAR 49.109-7" (finding 21). Under these circumstances, TTF's contentions that it was under duress must fail.

9

## CONCLUSION

The appeal is denied.

Dated: 11 December 2014

MICHAEL T. PAUL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59303, Appeal of TTF, L.L.C., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals